## JONES *v.* THE STATE.

Neither by error of commission nor of omission, on the part of the court below, was the accused deprived of an impartial trial ; and, apparently, the jury arrived at a correct conclusion with respect to his guilt.

Submitted February 17, — Decided March 13, 1903.

Indictment for murder. Before Judge Littlejohn. Sumter superior court. December 29, 1902.

*Blalock & Cobb,* for plaintiff in error.     *John C. Hart, attorney-general,* and *F. A. Hooper, solicitor-general,* contra.

SIMMONS, C. J.   The plaintiff in error, Jones, was indicted for the murder of one Tom Holton, and by the jury found guilty.   It appears that on the night of the killing they went to a negro frolic, and, at an early stage of the festivities, got into an altercation concerning a woman named Callie Westbrook.   The accused warned Holton not to be caught even speaking to her again.   Later, Holton started to dance with her ; whereupon Jones created a disturbance by drawing a pistol and shooting into the top of the house.   The occupants became alarmed and made their exits post-haste, most of them by way of a window.   Immediately thereafter, the accused met Holton in the yard, and, after some words, shot and killed him. According to the testimony of witnesses introduced by the State, Jones undertook to provoke Holton into a quarrel, and, failing to do so, murdered him in cold blood.   If, therefore, no material error was committed by the court during the progress of the trial, the conviction of the accused should be allowed to stand.   He makes complaint of the admission of certain testimony to the effect that, prior to the homicide, the woman above mentioned became engaged in conversation with one Joe Worthy; that the accused approached her, shook his pistol in her face, and upbraided her for coming to the frolic contrary to his command not to do so; and that she then "flirted off," saying she did not care what he had told her, "went to a window, and sat down and went to laughing with some one else."   Counsel insists this testimony was irrelevant.   We think otherwise, in view of the theory of the State, which was well supported by other evidence, that the accused was insanely jealous of this woman, resented any attention paid to her by other men, and endeavored to provoke a quarrel with Holton merely because he persisted in seeking her society in defiance of a warning by the accused not to so much as speak to her.

The accused was separately tried upon an indictment in which he and Pomp Walker were jointly charged with the murder of Holton.   The State attempted to show a conspiracy between Jones and Walker, but, on motion of counsel for the former, "the court ruled out the evidence introduced by the State for the purpose of showing conspiracy ; and the State thereupon abandoned the conspiracy theory."   One of the witnesses for the prosecution had testified

that Walker was present at the frolic, had brought a gun to the house where the merry-making was in progress, and, when the witness left, "was trying to shoot." This testimony was not particularly mentioned by counsel in making the motion to rule out evidence offered by the State for the purpose of showing a conspiracy, and, as the trial judge states in a note inserted by him in the motion for a new trial, was "consequently not technically excluded" by his ruling that the State had failed to show a conspiracy. In view of this ruling, what the witness testified with regard to the conduct of Walker was irrelevant. At the same time, however, it could not have operated to the prejudice of the accused, since it was so clearly irrelevant and immaterial as not to justify the supposition that the jury may have regarded it as having a bearing on the case.

Counsel for the State objected to the form of a question which counsel for the accused propounded to a witness, and the court sustained the objection. "The form of the question was changed, asked, and answered by the witness." Still the accused, through his counsel, presents the grievance that the court erred in this ruling, and that he was prejudiced by an intimation by the presiding judge as to what had been proved by this witness on his direct examination by the State's counsel. The question put to the witness was whether or not he had just made a certain statement — a statement which, as matter of fact, he had not made. The solicitor-general interposed the remark that the witness "didn't say that." His honor said: "I don't think that is the proper question." Counsel for the accused persisted, saying: "I am asking him if he said that." The judge thereupon replied: "I sustain the objection that you haven't got the right to ask him if he has not just said that." After due reflection, we have reached the conclusion that a new trial can not properly be granted upon so frivolous a complaint as that here presented.

The court informed the jury that there "are three modes laid down by law for impeaching witnesses," one of which is to prove general bad character, etc. Error is assigned upon this charge, "because there was no evidence offered to impeach a witness by proof of general bad character." The point is well taken, but the error thus committed by no means calls for a reversal of the judgment below, whereby the accused was denied a new trial.

It was further insisted that there was no evidence authorizing a charge on the subject of flight; and that his honor improperly declined to charge the jury as to "the law of manslaughter." There is no merit in either of these contentions; viewed in the light of the evidence appearing in the record sent to this court.

*Judgment affirmed.　By five Justices.*